IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHANESE K. MOORE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:11-CV-1873-SPM |
| | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Michael J. Astrue, the Commissioner of Social Security, denying the application of Plaintiff Shanese Katrina Moore for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (collectively referred to as the "Act"). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's decision and remand the matter for further proceedings consistent with this Memorandum Opinion.

**FACTUAL BACKGROUND**

Plaintiff, Shanese Moore, is a twenty-nine year old woman who claims disability due to seizures, depression, and bipolar disorder. She completed the 12th grade, and attended less than one year of college at Forest Park Community College. At the time of the hearing in this case she was attending Elaine Steven's Beauty College approximately four days a week.

1

Plaintiff started having seizures in 2006 and, as a result of the seizures, she had trouble staying employed and attending school. At the time of the hearing she was having fewer seizures than she had in the past. However, she had depression that caused her to be "moody" and "cry out of nowhere." She had "bad days" about three days a week, and on those "bad days" she was "snappy" and irritable, and stayed in her room or "downstairs." To deal with her depression, she sleeps half the day, and when she wakes back up she is not depressed. She also reported having auditory and visual hallucinations, which included a man telling her to discontinue her medications. (Tr. 27-28, 41, 48-52). Beginning in December 2010, Plaintiff began treating with a psychiatrist who diagnosed her with depression with psychosis vs. bipolar with psychosis and borderline personality. (Tr. 621-627).

## PROCEDURAL HISTORY

On June 30, 2009, Plaintiff applied for DIB and SSI.[1] Those applications were initially denied. Plaintiff requested, and was granted, a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable decision dated April 15, 2011. Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeal's Council, but the Council declined to review the case on August 31, 2011. Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

The Social Security Act (the "Act") defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] The application for DIB was not included in the record but the ALJ referenced it in her decision. The parties have not contested the application date; so, the court will accept June 30th as the date of Plaintiff's DIB application.

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since June 30, 2009, the alleged onset date.[2] At Step Two, the ALJ found that Plaintiff had the severe impairment of seizure disorder. The ALJ also found that Plaintiff's bipolar disorder was a medically determinable mental impairment but was not severe. At Step Three, the ALJ found that Plaintiff does not

---

[2] The ALJ's decision cites June 13, 2009, as the alleged onset date however, Plaintiff amended the onset date to June 30, 2009. (Tr. 28-30 & 174).

4

suffer from an impairment or combination of impairments of a severity that meets or medically equals the required severity of a listing. Prior to Step Four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the nonexertional limitations of only occasional exposure to extreme heat or cold, and no exposure to hazards of unprotected heights and moving machinery. At Step Four, the ALJ found that Plaintiff could perform her past work as a cashier, fast food worker, housekeeper, and nurse's aide. Thus, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act. (Tr. 14-20).

Plaintiff argues the ALJ's decision is not supported by substantial evidence with respect to Plaintiff's mental impairments because the ALJ failed to: (i) find any severe mental impairments at Step Two of the disability analysis; (ii) consider Plaintiff's mental limitations in assessing Plaintiff's RFC; and (iii) properly evaluate the opinions of several physicians and psychologists as expressed in Global Assessment of Functioning (GAF) scores.

Plaintiff also contends the ALJ's decision with respect to her seizure disorder is not supported by substantial evidence because the ALJ failed to consider the opinions of treating physician Uladzimir Luchanok. Plaintiff argues that, as a result, the ALJ erroneously found Plaintiff's impairments did not meet or equal Listing 11.02A for convulsive epilepsy at Step Three.

## DISCUSSION

### A. STANDARD FOR JUDICIAL REVIEW

The court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is 'less than

preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009)). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

After reviewing the administrative record and considering the submissions of the parties, I agree with the Commissioner's position and arguments with respect to Plaintiff's seizure disorder. However, for the reasons stated below, the ALJ's decision with respect to Plaintiff's mental impairments is not supported by substantial evidence.

### B. THE ALJ'S FAILURE TO FIND SEVERE MENTAL IMPAIRMENTS

At Step Two of the disability analysis, the ALJ is required to determine whether the claimant has a severe impairment. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic

6

work activities without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 415.920(c), 416.921(a); Social Security Ruling (SSR) 96-3p. Basic work activities include, among other things, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and unusual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b). The standard for proof of a severe impairment is low, but not meaningless. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding "[s]everity is not an onerous requirement for a claimant to meet" but it is also not a toothless standard). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707.

The only severe impairment the ALJ found at Step Two of the disability analysis was seizure disorder. The ALJ found that although Plaintiff's bipolar disorder was a medically determinable mental impairment, it was not severe. Plaintiff argues the ALJ's decision was erroneous because the medical records strongly indicate that Plaintiff had severe mental impairments. *See* Pl.'s Br. at 15-16. Plaintiff cites multiple instances in the record where she was diagnosed with conditions such as depression, major depression, bipolar disorder, mood disorder, and auditory and visual hallucinations. Plaintiff also argues that the fact that several different clinicians, including her treating psychiatrist, assessed GAF scores ranging from 32 to 60 indicates that she had mental impairments that went beyond a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.[3]

---

[3] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994).

In response, the Commissioner argues that even though Plaintiff had medically determinable mental impairments, substantial evidence supports the ALJ's non-severity finding because those impairments did not significantly limit Plaintiff's ability to perform basic work activities. *See* Def.'s Br. at 4-8. The Commissioner further argues that neither Social Security regulations nor case law requires an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score. *See* Def.'s Br. at 13.

### 1. *Plaintiff's Ability To Perform Basic Work Activities*

Social Security regulations provide specific guidance on evaluating whether mental impairments are severe, using the four broad functional areas of (i) activities of daily living; (ii) social functioning;(iii) concentration, persistence or pace; and (iv) episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a, 416.920a, 20 C.F.R. Pt. 404, Subpt. P., App. 1. An impairment will generally be found not severe if it causes no or mild limitations in the first three functional areas and no episodes of decompensation. *Id.* Applying these functional areas, the ALJ found that Plaintiff's mental impairment was not severe because she had *no* limitations in the areas of daily living and concentration, persistence and pace; only mild limitations in the area of social functioning, and no episodes of decompensation of extended duration. The ALJ appeared to rely

---

A GAF of 31-40 is defined as some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.
A GAF of 41-50 is defined as serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*
A GAF of 51-60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). *Id.*

exclusively on the third party function report submitted by Plaintiff's best friend in September 2009. (Tr. 18).

In the third party function report, Plaintiff's friend of 15 years, Janeé Outlaw, indicated that Plaintiff's ability to focus and follow written instructions depended on whether she had had a seizure. Ms. Outlaw further indicated that Plaintiff did not follow spoken instructions, get along with authority figures, handle stress, or handle changes in routine well. Ms. Outlaw also stated that Plaintiff is able to prepare meals, do housework, iron, clean, do laundry, and go outside every day, and that Plaintiff has no problems with personal care. Ms. Outlaw indicated that Plaintiff attends church each week, participates in family events, and goes out to eat with her, and that they spend "a lot of time together." (Tr. at 193-200).

While the foregoing facts could certainly suggest no or mild limitations in the four functional areas, the medical evidence suggests that there was a progression of Plaintiff's mental problems well after the third party function report was submitted in September 2009. For example, the medical records reflect that as of April 2010, Plaintiff's primary care physician, Dr. Poetz, diagnosed Plaintiff with post-ictal depression and made a "psych" referral noting that Plaintiff was reporting depression, auditory and visual hallucinations, crying all the time, sleeping all the time, and having no interest in her old activities. Although Dr. Poetz's notes reflect that Plaintiff's depression was getting "somewhat better" by July 2010, Plaintiff was still reporting auditory hallucinations. Beginning in December 2010, Plaintiff started treatment with a psychiatrist, Dr. Aqeeb Ahmad, who diagnosed Plaintiff with depression with psychosis vs. bipolar with psychosis and borderline personality. The ALJ erred by relying exclusively on the third party function report because it predates the bulk of the evidence in the administrative record that pertains to Plaintiff's mental impairments.

## 2. Plaintiff's GAF Scores

Although, as the Commissioner contends, an ALJ is not required by law to determine the extent of an individual's mental impairment based solely on a GAF score, where an ALJ ignores or fails to adequately consider low GAF scores in the administrative record, courts in the Eighth Circuit have repeatedly held the ALJ's decision was not supported by substantial evidence. *See, e.g., Conklin v. Astrue,* 360 F. App'x. 704, 707 (8th Cir.2010) (reversing and remanding an ALJ's disability determination in part because the ALJ failed to consider the claimant's GAF scores of 35 and 40); *Pates-Fires v. Astrue,* 564 F.3d 935, 944-45 (8th Cir.2009) (holding that the ALJ's RFC finding was not supported by substantial evidence in the record as a whole, in part due to the ALJ's failure to discuss or consider numerous GAF scores below 50), *Jones v. Astrue*, No. 2:11cv02194, 2012 WL 5383107, at *4 (W.D. Ark. Sept. 24, 2012) (holding decision of the ALJ was not supported by substantial evidence where ALJ failed to consider claimant's numerous GAF scores of 50 and below).

Here, there is no dispute that Plaintiff has a well-documented history of medically determinable mental impairments punctuated with GAF scores in the range of 32 to 60 from several different healthcare providers, including Plaintiff's treating psychiatrist. While these scores are not dispositive, they certainly suggest that clinicians who treated Plaintiff believed she had major to moderate mental impairments that could impact her ability to function at work. The ALJ's decision mentioned some of the GAF scores at the higher end of the range, ignored those at the bottom of the range, and discounted the scores between 41-50, which came from Plaintiff's treating psychiatrist, Dr. Ahmad. The ALJ gave no explanation for ignoring the lowest GAF scores and declined to accept Dr. Ahmad's GAF scores on grounds that they were not supported by either his treatment notes or the "longitudinal history". (Tr. 16-17).

The ALJ's conclusion that Dr. Ahmad's GAF scores are not supported by his treatment notes is not borne out by the record. Dr. Ahmad's treatment notes reflect that on his first visit with Plaintiff on December 13, 2010, Plaintiff complained of mood swings, and also reported anxiety, panic attacks, hearing voices, and seeing a man. Dr. Ahmad found that Plaintiff's mood was up and down, her affect was anxious, her form of thought was tangential, and that she experienced auditory and visual hallucinations. He gave her a GAF score of 50. At her next visit on January 17, 2011, Dr. Ahmad noted that Plaintiff was not very cooperative, giving contradictory answers or refusing to answer questions. He observed flat affect, reduced psychomotor activity, and some death wishes. He gave diagnoses of bipolar with psychosis, borderline personality disorder, and a lowered GAF score of 41. At the last visit reflected in the record, February 21, 2011, although Plaintiff reported that she was fine, Dr. Ahmad noted that she was hearing voices and felt that people were against her, that she had "assaulting ideas," and that her sleep was marginal.[4] He raised her GAF score to 49 and kept the previous diagnoses, but increased her prescribed dose of Seroquel.[5]

The ALJ's conclusion that Dr. Ahmad's GAF scores are inconsistent with the "longitudinal history" also falls short. The "longitudinal history" includes GAF scores of 35 and 32 by two different doctors in December 2009 and May 2010, respectively. As noted above, Plaintiff's medical history reflects that in April 2010, Plaintiff's primary care physician

---

[4] As Plaintiff's Brief points out, Dr. Ahmad's notes are difficult to read in places. To confirm the reading given above, counsel's assistant telephoned Dr. Ahmad's office. His nurse checked with him and gave the translation given above. This information was given to the Appeals Council and the Commissioner did not object to the translation. *See* Pl.'s Br. at 8 n. 5.

[5] Seroquel is a brand name for Quetiapine, an antipsychotic drug used to treat schizophrenia and symptoms of bipolar disorder (manic-depressive illness). It is also used together with other medicines to treat major depressive disorder (MDD). *U.S. National Library of Medicine*, www.ncbi.nlm.nih.gov.

diagnosed her with post-ictal depression and noted that Plaintiff was reporting depression, auditory and visual hallucinations, crying all the time, and sleeping all the time, among other symptoms. In addition, Plaintiff testified that, as of the time of her hearing on March 1, 2011, she continued to have auditory and visual hallucinations. Although, consistent with the activities described in the September 2009 third party function report, Plaintiff testified that she continued to live with her fiancé, attends beauty college, and generally is able to take care of her personal needs, she also indicated that in order to deal with her symptoms, approximately three days out of each week she has to sleep for about half the day and/or isolate herself from others.

The ALJ's failure to explain how or why she found Dr. Ahmad's GAF scores inconsistent with his treatment notes and the longitudinal history leaves the decision wanting, particularly in light of the fact that Dr. Ahmad is a treating specialist. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so."). "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). In sum, when viewed against the backdrop of the record as a whole, the ALJ's decision that Plaintiff's mental impairments were not severe is not supported by substantial evidence.

Had the ALJ adequately considered Plaintiff's mental impairments as part of the RFC determination, any error in finding Plaintiff's mental impairments were non-severe might have

12

been harmless. *See Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *see also* 20 C.F.R. §§ 404.1545(a)(2) , 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). However, as discussed below, the error was not harmless because it is not at all clear that the ALJ adequately considered Plaintiff's mental impairments when determining her RFC.

### C. THE ALJ'S FAILURE TO ADEQUATELY CONSIDER PLAINTIFF'S MENTAL IMPAIRMENTS WHEN ASSESSING PLAINTIFF'S RFC

Prior to Step Four, the ALJ is required to determine Plaintiff's residual functional capacity (RFC). The residual functional capacity is defined as what the Plaintiff can do, despite her limitations, and it includes an assessment of physical abilities and mental impairments. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). It is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the plaintiff's own descriptions of his limitations. *See Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000); *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.2001). Agency regulations require that the RFC assessment include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts; for example, laboratory

findings and nonmedical evidence; daily activities and observations. *See* SSR 96-8p.[6] In determining a claimant's RFC, the ALJ must consider the limiting effects of all impairments, even those that are not severe. 20 CFR §§404.1545(e), 416.945 (e); *see also Cunningham v. Apfel,* 222 F.3d 496, 502 (8th Cir. 2000). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.

The ALJ in this case determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitations of only occasional exposure to extreme heat or cold, and no exposure to hazards of unprotected heights and moving machinery. The ALJ did not include any mental limitations in the RFC. Plaintiff contends that the ALJ failed to properly consider her mental impairments and all of the medical evidence, including her GAF scores, when assessing her RFC. I agree. The ALJ's opinion is largely silent with respect to Plaintiff's mental RFC, even though it discusses at length Plaintiff's seizure disorder. In the eight paragraphs following the RFC determination, only one paragraph comes close to resembling a "narrative discussion" or assessment of Plaintiff's mental impairments:

> Prior to the request for hearing in this case, medical consultants with the State Disability Determination Service made assessments regarding the nature and severity of claimant's impairments, and concluded that the claimant had . . . non-severe mental impairments (3F). The findings by these consultants are part of the record of this case, and are considered expert opinion on the issue of the claimant's medical capabilities and limitations. Social Security Ruling 96-6p.

(Tr. 20).

Thus, it appears that, at least with respect to Plaintiff's mental RFC, the ALJ simply deferred to the findings of the agency consultant, Dr. Marsha Toll. Dr. Toll's assessment, which

---

[6]Social Security Rulings are treated with deference by the court; where a reasonable interpretation of the statute is offered, it is lawful. *Barnhart v. Walton,* 535 U.S. 212, 224 (2002).

14

was completed in November 2009, falls far short of substantial evidence for several reasons. First, although it was proper for the ALJ to consider Dr. Toll's opinion, as a nonexamining source her opinion was not entitled to great weight. 20 C.F.R. § 404.1527(c), (e)(2)(i). In addition, Dr. Toll's assessment predates the vast majority of the medical records that are pertinent to Plaintiff's mental impairments at issue in this case. As discussed above, those records, which include records from Plaintiff's treating psychiatrist, suggest that Plaintiff had mental impairments that could easily impact her ability to do work related activities on a regular and continuing basis. Plaintiff's testimony at the hearing that three days out of each week she has "bad days" requiring her to sleep half the day or isolate herself from others also suggests that Plaintiff is limited in her ability to perform work related activities on a regular and continuing basis. Without more, Dr. Toll's assessment cannot constitute substantial evidence in support of the ALJ's RFC.

Notwithstanding the Commissioner's argument to the contrary, with respect to Plaintiff's mental impairments, the ALJ did not properly evaluate Plaintiff's credibility as required under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). As part of the RFC determination, the ALJ must evaluate Plaintiff's credibility as required under *Polaski*. The court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). The ALJ is not required to discuss each of the *Polaski* factors in relation to Plaintiff, and is entitled to discount Plaintiff's complaints if they are inconsistent with the evidence as a whole. However, when the ALJ discounts Plaintiff's complaints, the ALJ is required to detail the reasons for discrediting the testimony and to set forth the inconsistencies found. *See Ford v. Astrue,* 518 F.3d 979, 981 (8th Cir. 2008).

The ALJ generally found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, these symptoms are not credible to the extent they are inconsistent with the [RFC]." (Tr. 19). Although the ALJ discussed at length the reasons why she discredited Plaintiff's assertions about the severity of Plaintiff's seizure disorder, the ALJ made no similar credibility determination with respect to Plaintiff's mental impairments. While there was substantial evidence in the record that Plaintiff was noncompliant with her seizure medication, there is no evidence that Plaintiff was not compliant with her antipsychotic and depression medication. The ALJ neither expressly found Plaintiff's statements about the impact of her depression, mood disorder and/or medically determined mental impairments to be incredible, nor did she expressly state any basis for discrediting Plaintiff's subjective complaints about her mental impairments.

In short, missing from the ALJ's RFC determination is an adequate assessment of either Plaintiff's credibility with regard to her subjective complaints or of Plaintiff's ability to do work-related activities on a regular and continuing basis in spite of her medically diagnosed mental impairments. As written, the ALJ's opinion makes it difficult, if not impossible, to determine whether she properly considered all of Plaintiff's mental impairments. It is also unclear whether, in light of the progression of Plaintiff's mental health symptoms, the ALJ needed to develop the record further to properly assess how those symptoms, if at all, affected Plaintiff's ability to function in her past relevant work. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case" even when the claimant is represented by an attorney). These unanswered questions require that this case be remanded to the Commissioner for further consideration.

## CONCLUSION

For all of the foregoing reasons, the court finds that this matter should be reversed and remanded to the Commissioner for further consideration consistent with this memorandum opinion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED AND REMANDED** for further proceedings consistent with this Memorandum Opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2013.